## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CASE NO.: 3:19-bk-02193-JAF**

In Re:                                                    **CHAPTER 7**

**Denval Sinclair Edwards, Jr.**

      **Debtor**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY PINGORA

---

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service plus an additional three (3) days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of Court at 300 N. Hogan Street, Suite 3-150, Jacksonville, Florida 32202-4267, and serve a copy on the movant's attorney Jason Weber, Esq. at Sirote & Permutt, P.C., 1000 Corporate Drive, Suite 150, Ft. Lauderdale, Florida 33334, and any other appropriate persons within the time allowed.  If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and may grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

**COMES NOW** Pingora Loan Servicing, LLC, as serviced by Flagstar Bank, FSB, its principals, investors, successors, and/or assigns, if any, (hereinafter "Secured Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and moves this Honorable Court to lift the automatic stay in the above-referenced Debtor's Chapter 7 bankruptcy and in support thereof, the Creditor avers as follows:

1. This Honorable Court has jurisdiction to hear these matters and enter final orders pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362.  The Motion for Relief from Automatic

Stay constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

2.   The Debtor listed above (the "Debtor") filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on June 10, 2019.

3.   The Debtor obtained a loan in the amount of $230,733.00 which was evidenced by a Promissory Note dated February 27, 2015 (the "Note").  See "Exhibit A" attached hereto.

4.   Denval S Edwards Jr and Monique McDougall Lewis, husband and wife, executed a Mortgage dated February 27, 2015 (the "Mortgage"), to and in favor of DHI Mortgage Company, Ltd. and granted a first mortgage lien on real property (the "Property") located at 502 Deercroft Lane, Orange Park, FL 32065, and legally described as:

```
Lot 679, FOREST HAMMOCK AT OAKLEAF PLANTATION-UNIT TWO, according to the Plat
thereof, as recorded in Plat Book 55, Page 10, of the Public Records of Clay
County, Florida
```

5.   The Mortgage was recorded on March 10, 2015, in Book 3726, Pages 786-796 of the Public Records of Clay County.  See "Exhibit B" attached hereto.

6.   The Debtor is indebted to Secured Creditor in the amount of $236,741.94 principal balance, plus any additional interest, advances, costs and attorneys' fees advanced by Secured Creditor, pursuant to the loan documents.  See "Exhibit C" attached hereto.

7.   The Debtor has failed to remit payment to Secured Creditor since the installment due on February 1, 2018 and, therefore, the interests of Secured Creditor are not being adequately protected.

8.   Upon information and belief, said property has not been claimed exempt and pursuant to the duly filed Statement of Intentions, the property is being surrendered. The property has not been abandoned by the Trustee.

9.  Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted to allow Secured Creditor to pursue in *rem* remedies given that its interests are not being adequately protected due to the failure of the Debtor(s) to make payments prior to the filing of the instant bankruptcy petition and that there is no equity in the subject property for the benefit of unsecured creditors of the estate.

10. Furthermore, Secured Creditor's security interest in the property is being significantly jeopardized by the Debtor(s) failure to make said payments while Secured Creditor is prohibited from pursuing lawful remedies to protect said security interest.

11. Secured Creditor has incurred attorneys' fees of $750.00 and costs of $181.00 as a result of having to file this Motion.  Secured Creditor seeks an award of its fees and costs or, alternatively, leave to seek recovery of its reasonable bankruptcy attorneys' fees and costs in any pending or subsequent foreclosure action.

12. Secured Creditor respectfully requests the Court waives the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so Secured Creditor can pursue its in *rem* remedies without delay.

13. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary that one be held within thirty (30) days.

14. Secured Creditor requests that the Court Order provides that all communications sent by Secured Creditor in connection with proceedings against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent to the Debtor(s).

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that it may pursue *in rem* remedies to protect its security interests in the Debtor(s) property outside of the bankruptcy forum, that the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) be waived, that Secured Creditor be awarded its attorneys' fees and costs for filing this Motion, that in the event a hearing is necessary that one be held within thirty (30) days, that the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code, that Secured Creditor have relief from applicable provisions of FRBP 3002.1 and for such other relief as the Court may deem just and proper.

**I HEREBY CERTIFY** in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion for Relief from the Automatic Stay was mailed, first class postage prepaid and or by Electronic Filing this __22nd__ day of __July_____, 2019.

Respectfully submitted,

s/Jason A. Weber
Jason A. Weber, Esq.
Fla. Bar No. 0051681
Counsel for Secured Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
1000 Corporate Drive, Suite 150
Fort Lauderdale, Florida 33334
Telephone:  (954) 828-1118
Facsimile:  (954) 828-1101
Toll Free:  (800) 826-1699
jweber@sirote.com

Copies furnished to:

*Debtor*
**Denval Sinclair Edwards, Jr.**
502 Deercroft Lane
Orange Park, FL 32065

**E. R. Mousa**
Law Offices of E.R. Mousa, PA
6550 St. Augustine Rd Suite 202
Jacksonville, FL 32217
Email: mousa@mousalaw.com

*Trustee*
**Doreen Abbott**
PO Box 56257
Jacksonville, FL 32241-6257

*U.S. Trustee*
**United States Trustee - JAX 13/7**
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

**EXHIBIT A**

They is to certify that this is a true and original copy of the original document still in ...

## Note

| FHA Case No. |
|---|
| |

**THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.**

February 27, 2015                    St. Johns                         FL
      *[Date]*                         *[City]*                       *[State]*

502 Deercroft Lane, Orange Park, FL 32065
*[Property Address]*

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 230,733.00     (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is DHI Mortgage Company, Ltd.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     3.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st   day of each month beginning on April 1, 2015     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on March 1, 2045     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 911209, Dallas, TX 75391-1209

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,068.57     .

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

We hereby certify that this is a true and correct copy of the original document.

Mortgage Company, LTD.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

FHA Fixed Rate Note-FL
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/15
VMP1R(FL) (1411)
Page 2 of 4

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Grounds for Acceleration of Debt.**

**(a)  Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Fixed Rate Note-FL
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/15
VMP1R(FL)(1411)
Page 3 of 4

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
DENVAL S EDWARDS, Jr            -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                          -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.        [Sign Original Only]

Loan origination organization DHI Mortgage Company, Ltd.
NMLS ID
Loan originator Steven Hendren
NMLS ID

PAY TO THE ORDER OF

WITHOUT RECOURSE
DHI MORTGAGE COMPANY, LTD. LP
BY: DHI MORTGAGE COMPANY GP, INC.
ITS GENERAL PARTNER



TAYLOR HAJEK, ASSISTANT SECRETARY

FHA Fixed Rate Note-FL
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/15
VMP1R(FL) (1411)
Page 4 of 4

CFN # 2015011308, OR BK 3726 Pages 786 - 796, Recorded 03/10/2015 at 07:56 AM,
TARA S. GREEN Clerk Circuit Court Clay County Doc D: $807.80 Int Tax
$461.47 Deputy Clerk ERECORD

Case 3:19-bk-02193-JAF   Doc 11   Filed 07/22/19   Page 10 of 21

**EXHIBIT B**

Return To:
DHI Mortgage Company
Post Closing Department
10700 Pecan Park Boulevard
Suite 450
Austin, TX  78750

This document was prepared by:
DHI Mortgage Company, Ltd.
Katherine Richardson
10700 Pecan Park Blvd.
Suite 450, Austin, TX
78750

──────────── [Space Above This Line For Recording Data] ────────────

**State of Florida**

# MORTGAGE

| FHA Case No. |
| --- |
| |

MIN

THIS MORTGAGE ("Security Instrument") is given on February 27, 2015
The Mortgagor is DENVAL S EDWARDS Jr and MONIQUE MCDOUGALL LEWIS, husband and wife.

, whose address is

502 Deercroft Lane
Orange Park, FL 32065
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. DHI Mortgage Company, Ltd.

("Lender") is organized and existing under the laws of Texas                                          , and
has an address of 10700 Pecan Park Blvd. Suite 450
Austin, TX  78750                                      . Borrower owes Lender the principal sum of
two hundred thirty thousand seven hundred thirty-three and 00/100
                                        Dollars (U.S. $230,733.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on March 1, 2045
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the

FHA Florida Mortgage with MERS - 4/96
VMP-4N(FL) (1302)          Amended 2/01
Page 1 of 9                Initials:
VMP Mortgage Solutions, Inc.

successors and assigns of MERS, the following described property located in Clay

County, Florida:

Lot 679, FOREST HAMMOCK AT OAKLEAF PLANTATION-UNIT TWO, according to the Plat thereof, as recorded in Plat Book 55, Page 10, of the Public Records of Clay County, Florida

Parcel ID Number:

which has the address of 502 Deercroft Lane                     [Street]

Orange Park                          [City], Florida 32065        [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: _____

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Initials: _J.E._
_M.M_

VMP -4N(FL) (1302)                          Page 3 of 9

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 -4 N(FL) (1302)

Page 4 of 9



Initials:

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Initials: _____



**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Initials 

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

   **17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

   If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

   Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

   Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

   **18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

   **If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

   **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

   **20. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

   **21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |



Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

Paula J David

_____ (Seal)
DENVAL S EDWARDS, Jr                      -Borrower

_____

Kristie S Smith

_____ (Seal)
MONIQUE MCDOUGALL LEWIS                    -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

VMP-4N(FL) (1302)                         Page 8 of 9

**STATE OF FLORIDA,** St. Johns                                      **County ss:**

The foregoing instrument was acknowledged before me this 2·27·15 by
DENVAL S EDWARDS, Jr & MONIQUE MCDOUGALL LEWIS

who is personally known to me or who has produced
as identification.



_____
Notary Public

Loan origination organization DHI Mortgage Company, Ltd.
NMLS ID _____
Loan originator Steven Hendren
NMLS ID

Record and Return:
Aldridge Pite, LLP
1615 South Congress Avenue
Suite 200
Delray Beach, FL 33445

MERS MIN #
MERS PHONE #
P.O. Box 2026 Flint, Michigan 48501-2026

## ASSIGNMENT OF MORTGAGE

### KNOWN ALL MEN BY THESE PRESENTS:

That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR DHI MORTGAGE COMPANY, LTD ITS SUCCESSORS AND ASSIGNS**, whose address is P.O. Box 2026 Flint, Michigan 48501-2026 party of the first part, does hereby grant, assign, transfer and set over unto **PINGORA LOAN SERVICING, LLC**, the said party of the second part, a certain mortgage bearing the date of 2/27/2015, in favor of Mortgage Electronic Registration Systems, Inc. as nominee for DHI Mortgage Company, LTD its successors and assigns, executed by Denval S. Edwards, Jr. and Monique McDougall Lewis, husband and wife, recorded 3/10/2015 in the Public Records of Clay County, Florida, Official Records Book 3726, Page 786.

TO HAVE AND TO HOLD the same unto the said party of the second part, heirs, legal representatives, successors and assigns forever.

Signed: _____

Print Name: Jennifer L. Caulkins
Assistant Secretary

As: Assistant Secretary

For: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR DHI MORTGAGE
COMPANY, LTD ITS SUCCESSORS AND ASSIGNS

Signed, sealed and delivered
in our presence:

Signed: _____

Print Name: Asmar Johnson

Signed: _____

Print Name: BriAnBles

STATE OF NJ )
                              ) SS:
COUNTY OF MERCER )

THE FOREGOING INSTRUMENT was acknowledged before me this 1 day of July 2016, by Jennifer L. Caulkins as
Asst. Secty who is/are personally known to me or who have/has produced ____ as identification and
who did (did not) take an oath.

Notary: Stacy Sperling White        My Commission Expires: 5/21/17

Page 1 of 1

EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CASE NO.: 3:19-bk-02193-JAF**

In Re:                                                **CHAPTER 7**

**Denval Sinclair Edwards, Jr.**

    **Debtor**

_____ /

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM STAY

STATE OF __Michigan__ )

COUNTY OF __Oakland__ )

    BEFORE ME, the undersigned, Notary Public, personally appeared ___**Melissa Wallace**___,

who is known to me and after being by me first duly sworn, deposes and says the following:

    1.    I am making this Affidavit in connection with and support of the Motion for Relief from

stay filed by Movant, Pingora Loan Servicing, LLC as serviced by Flagstar Bank, FSB, its principals,

investors (hereinafter "Secured Creditor"), a secured creditor in the above styled bankruptcy proceedings.

    2.    Secured Creditor holds the subject Note and Mortgage.

    3.    I am familiar with the loan made by DHI Mortgage Company, Ltd to Denval S Edwards,

Jr, which is the basis for Secured Creditor's status.

    4.    Flagstar Bank, FSB ("Flagstar") maintains a computerized account of the loan including all

receipts disbursements, charges and credits.

    5.    The amount of the indebtedness and the nature and extent of default set forth in the motion is

derived from said computerized account of the Loan.

    6.    I am the __Bankruptcy Specialist__ (title) for Flagstar. In that capacity, I have access to

said computerized account records.

7.    Said records are made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, the records are kept in the course of Flagstar's regularly conducted activity and are made by Flagstar as a regular practice.

8.    In connection with this case, I have reviewed the aforementioned computerized account records, the loan documents and other business records of Flagstar.

9.    As of As of July 18, 2019, the subject loan has an outstanding principal balance of $236,741.94, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

10.    As of As of July 18, 2019, Debtors have defaulted on payments due to Secured Creditor by failing to make payment due on February 1, 2018 and all subsequent monthly payments.

11.    I have reviewed the documents attached as exhibits to the Motion and they are true and accurate copies of the original documents.

12.    This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Flagstar's books and business records and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing, if necessary.

**FURTHER AFFIANT SAYETH NAUGHT**

The facts stated herein are true. In verification of the same, I subscribed my signature hereto.

Sworn to by me on this 22nd day of ___July___, 2019.

_____
Affiant    **Melissa Wallace**

Sworn to and subscribed before me on this 22nd day of ___July___, 2019.

_____
Notary Public    Marion K. Begovich
My Commission Expires: _____

**Marion K. Begovich**
NOTARY PUBLIC, LAPEER COUNTY, MI
My Commission Expires 08/09/2024
Acting in Oakland County